**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NEUROLOGICAL SURGERY ASSOCIATES A/S/O D.O.<br><br>Plaintiff(s),<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY CIVIL ACTION; ABC CORP. (1-10) (Said names being fictitious and unknown entities),<br><br>Defendant(s), | CIVIL ACTION NO.: 12-5600 (SRC-CLW) |

PLAINTIFFS' BRIEF IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

On the Brief and Of Counsel:

Andrew R. Bronsnick, Esq.

Massood & Bronsnick, LLC
Attorneys at Law

**STATEMENT OF FACTS**

Neurosurgical Spine Specialists of New Jersey (hereinafter referred to as "Neurosurgical Specialists" or "Plaintiff") is a medical services practice specializing in spinal surgery located in Clifton, New Jersey.

On April 8, 2011, patient D.O. ("Patient" or "D.O.) underwent an extensive spinal surgery, performed by Dr. Cifelli of Neurosurgical Specialists, which included the following CPT codes: 63047-59; 63048-59; 63030-59; 22630; 22630-50; 22851; 22840; 20936; 20930; 69990; 77002-26; 38220; 20926; 22899-59; 22612; 20937; 38230 (See Defendant's Brief in Support of Motion for Summary Judgment, **Exhibit D** and Certification of Andrew R. Bronsnick**, Exhibit A**).  Sarah Bodie, PA-C acted as an assistant surgeon for the procedures performed on April 8, 2011 and Neurosurgical Specialists also submitted her bills to the insurance carrier.

Dr. Cifelli appealed the non-payment of certain CPT codes, since payment had not been properly paid for same.[1] On November 22, 2011 Neurological Surgery Associates, P.A. sent an letter to Aetna requesting a reconsideration of the non-payment of CPT codes 63047-59; 63048-59; 63030-59 of the primary surgeon's bill. Dr. Cifelli explained in his letter that these three codes were all billed with the 59 modifier because they were separate and distinct procedures. Dr. Cifelli was permitted to bill both 63047 and 63048 and should have received 100% payment pursuant to those CPT codes. See Bronsnick Cert., Exhibit B, Page 287, from Coding Companion for Neurosurgery/Neurology, (Optum, 2013). Dr. Cifelli billed $36,423 for 63047 and $11,813 for 63048. Dr. Cifelli also billed $30,123 for 63030. Id at page 285. Again, Dr.

Massood & Bronsnick, LLC
Attorneys at Law

---

[1] The calculation in the Complaint for non-payment did not accurately reflect the Explanation of Benefits at issue. The calculations contained herein accurately reflect the amounts at issue in this case.

Cifelli should have received full payment for this separate and distinct code billed with a 59 modifier. He did not receive any payments for these three codes. Aetna's explanation for non-payment on these codes was:

> The member's plan provides coverage for charges that are reasonable and appropriate as determined by Aetna. The charge for this service does not meet this requirement of the member's plan of benefits because this service was considered incidental to another procedure performed on the same date of service.

Defendant's Brief, Exhibit E, Explanation of Benefits dated 5/12/11.

On November 30, 2011 Aetna responded to Dr. Cifelli's letter claiming they did not receive the "appeal" within the 180 day time-frame allotted for such appeals. Defendant's Brief, Exhibit H. The Aetna letter also indicated that initial claim decision was decided on April 26, 2011 and the "appeal" was not received until November 28, 2011 and as such, no additional payments will be made on the basis of timely filing. At no time did Aetna informed Dr. Cifelli that an appeal was required or that there was a specific time-frame for the appeal.

In addition to Dr. Cifelli's bill, the assistant surgeon's bill was not properly paid. The total amount billed for the assistant surgeon, Sarah Bodie for the April 8, 2011 surgery was $250,030.00. Aetna paid $7,415.69 leaving $239,783.44 as an outstanding balance.

Aetna sent out a letter on July 16, 2011 requesting a refund of $5,071.01 of the paid amount for the bill for services for Sarah Bodie. This issue was never resolved.

The Defendant relies upon a Complaints and Appeal Riders for three (3) different states, New York, Louisiana and Texas, which are included as Exhibit C to the Defendants' Brief.[2] There is not any language regarding appeals in the Plan document itself. The page cited in Defendant's Brief involves the "Louisiana Complaint and Appeals Health Rider" and the Section

Massood & Bronsnick, LLC
Attorneys at Law

---

[2] Defendant fails to provide any certification or affidavit from a representative at Aetna to confirm which, if any, of these three Complaint and Appeals Riders applies to D.O.

entitled "Appeals of Adverse Benefit Determination." Defendant's Brief, Exhibit C. However, this "Formal process" for appeal is only required if "Aetna gives notice of an **adverse benefit determination**." Aetna never issued and "adverse benefit determination" to Dr. Cifelli regarding D.O. As such, there was no appeal required regarding the CPT codes at issue.

Furthermore, the relevant Rider page cited by Defendant also indicates, "You may also choose to have another person (an authorized representative) make an appeal on your behalf by providing written consent to Aetna. Dr. Cifelli provided an Assignment of Benefits to Aetna from D.O. dated February 18, 2011. Bronsnick Cert., **Exhibit C**. This document would have permitted Dr. Cifelli and Neurological Surgery to act on behalf of D.O. In fact, Aetna made payments directly to Neurological Surgery and Dr. Cifelli, and received and responded to his letter of November 22, 2011.   As such, Aetna honored the Assignment of Benefits signed by D.O.

# LEGAL ARGUMENT

## I.  SUMMARY JUDGMENT STANDARD

Pursuant to Rule 56(c), summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "A factual dispute is material if it bears on an essential element of the plaintiff's claim, and is genuine if a reasonable jury could find in favor of the nonmoving party." Natale v. Camden County Correctional Facility, 318 F.3d 575, 580 (D.NJ. 2003). The moving party has the initial burden of informing the court of the basis for its motion and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. In reviewing the record, the court is "required to view the inferences to be drawn from the underlying facts in the light most favorable to [the non-moving party]." Kopec v. Tate, 361 F.3d 772, 775 (3d Cir. 2004). The non-moving party's allegations must be taken as true "when supported by proper proofs whenever these allegations conflict with those of [the moving party]." Id. The motion should only be granted if, "viewing the evidence in the light most favorable to the nonmoving party, there is no question of material fact for the jury and any verdict other than the one directed would be erroneous under the governing law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (internal quotations omitted).

"The standard for granting or denying a motion for summary judgment does not change in the qualified immunity context." Curley v. Klem, 298 F.3d 271, 282 (3d Cir. 2002) (internal

citation and quotations omitted). "Viewing the facts in the light most favorable to the plaintiff, a court must determine whether the defendant should prevail as a matter of law." Id.

Defendant, as the moving part has not provided an enumerated Statement of Undisputed Material Facts. As such, its motion is deficient and should be denied on this basis alone.

## II.   PLAINTIFF HAS PROPER STANDING

### A. Plaintiff Provider Has Standing As a Matter of ERISA Law

Plaintiff has standing to bring its claims against Defendant under ERISA law, regardless of the presence of any anti-assignment provisions in the subscriber agreements.

A health care provider to whom a patient assigns benefits, such as Plaintiff here, has standing to sue as a "beneficiary" under § 502(a) of ERISA, 29 U.S.C. § 1132(a)(1)(B). ERISA defines a "beneficiary" as "a person designated by a participant . . . who is or may become entitled to benefit" under the plan. 29 U.S.C. § 1002(8). ERISA further provides that a "beneficiary" is entitled to bring litigation to collect benefits owed under the plan. 29 U.S.C. § 1132(a)(1)(B). When the Patient assigned her benefits to Plaintiff, the Patient designated Plaintiff to be entitled to certain benefits under the plan, including (but certainly not limited to) the right to receive payment. Thus as a matter of ERISA law, Plaintiff is a beneficiary and has standing to bring his causes of action against Defendants regardless of the presence of any anti-assignment provisions in the Defendants' subscriber agreements.

Many federal courts have recognized that a health care provider to whom a patient assigns benefits has standing to sue as a "beneficiary" under § 502(a) of ERISA. See, e.g., Pascack Valley Hospital. v. Local 464A UFCW Welfare Reimbursement Plan, 388 F.3d 393, (3rd Cir. 2004)(indirectly affirming the standing of health care providers under § 502(a)); City of

Hope Nat'l Med. Ctr. v. Healthplus, Inc., 156 F.3d 223, 227-228 (1st Cir. 1998) ("a health care provider, as the assignee of a beneficiary, acquires derivative standing and is able to sue as a 'beneficiary' by standing in the shoes of his assignor"); Tango Transp. v. Healthcare Fin. Servs. LLC, 322 F.3d 888, 891-92 (5th Cir. 2003) ("an assignee of a plan participant has derivative standing to bring a cause of action for enforcement under ERISA"); Cromwell v. Equicor-Equitable HCA Corp., 944 F.2d 1272, 1277-78 (6th Cir. 1991) ("[a] health care provider may assert an ERISA claim as a 'beneficiary' of an employee benefit plan if it has received a valid assignment of benefits"); Kennedy v. Conn. Gen. Life Ins. Co., 924 F.2d 698, 700-01 (7th Cir. 1991) ("§ 1132(a)(1)(B) supplies jurisdiction when a provider of medical services sues as an assignee of a participant"); Lutheran Med. Ctr. v. Contractors, Laborers, Teamsters & Engineers Health & Welfare Plan, 25 F.3d 616, 619-21 (8th Cir. 1994) (holding that under § 502(a) of ERISA, health care providers had standing to bring a cause of action as assignees of beneficiaries despite a non-assignment provision, because the insurer had conducted itself as if the assignment of benefits was effective); Misic v. Bldg. Serv. Employees Health & Welfare Trust, 789 F.2d 1374, 1378 (9th Cir. 1986) (a health care provider "sues derivatively, as assignee of beneficiaries" because the health care provider "stands in the shoes of the beneficiaries" who "are expressly authorized by § 1132(a)(1)(B) to sue to recover benefits due").[3]

---

[3] Although the United States Court of Appeals for the Third Circuit has not yet issued a formal opinion applying the rule that a health care provider to whom a patient assigns benefits has standing to sue as a "beneficiary" under § 502(a) of ERISA, numerous district courts within this circuit have explicitly done so. See, e.g., Charter Fairmount Inst., Inc. v. Alta Health Strategies, 835 F. Supp. 233, 237 (E.D. Pa. 1993) ("health care providers, once assigned the right to receive claims under an ERISA welfare benefit plan, are beneficiaries under § 1132(a)(1)(B)"); Northwestern Inst. of Psychiatry, Inc. v. Travelers Ins. Co., No. 92-1520, 1992 U.S. Dist. LEXIS 13700 (E.D. Pa. Sept. 3, 1992) ("in light of the alleged assignment of benefits under the Plan," an insurer "may be deemed a beneficiary" under ERISA "and may, therefore, assert a claim under § 1132(a)(1)(B)" of ERISA); Bryn Mawr Hosp. v. Coatesville Elec. Supply Co., 776 F. Supp. 181, 184 (E.D. Pa. 1991) ("jurisdiction over [an ERISA] suit brought by an assignee of

Massood & Bronsnick, LLC
Attorneys at Law

Defendant argues that Plaintiff cannot have standing to bring these claims against Defendant because the Aetna subscriber agreement contains a provision that purports to limit the right of plan participants to assign benefits to health care providers such as Plaintiff.

Through the operation of these provisions of ERISA, Plaintiff, by virtue of the assignment of benefits received from the Patient, is entitled to bring this litigation. Thus when Defendant argue that the subscriber agreements' anti-assignment provisions deprive Plaintiff of standing, Defendant is arguing that language in a contract defeats the operation of a federal statute, ERISA. This argument fails because ERISA preempts the operation of any body of state law (including state contract law concerning anti-assignment provisions).

This issue was addressed by the Bankruptcy Court in Neuner v. Horizon Blue Cross Blue Shield of N.J., 301 B.R. 662 (Bankr. D.N.J. 2003). The Neuner Court considered the question of whether health care providers have standing to sue Horizon as beneficiaries under § 502(a) of ERISA. Following the "overwhelming weight of authority among other circuits" and "[n]umerous district courts in this circuit," the Neuner Court held that health care providers "have standing to sue Horizon under ERISA provisions." Id. at 682. The Neuner Court noted that on an earlier motion for summary judgment, the Court had "determined under New Jersey law" that "the anti-assignment clause in the various Horizon plans are valid and enforceable." Id. at 682 n.16. Yet on this issue, the Neuer Court held that its earlier determination "does not apply to medical plans governed by ERISA" because the requirements of ERISA "preempt state law." Id.

---

plan benefits was proper"); Rehabilitation Inst. of Pittsburgh v. Blue Cross & Blue Shield of N.W. Va., Inc., 1984 U.S. Dist. LEXIS 24780 at *6-7 (W.D. Pa. July 27, 1984) (plaintiff health care provider, as the assignee of the rights of a plan participant, "stands in the shoes of a participant" and thus has standing to sue an insurer under § 502(a) of ERISA); Neuner v. Horizon Blue Cross Blue Shield of N.J., 301 B.R. 662, 682 (Bankr. D.N.J. 2003) (adopting the holding of "[n]umerous district courts in this circuit" that "health care providers have standing to sue under § 1132(a)(1)(B) where there has been an assignment of rights under the plan").

Thus, even if the anti-assignment provision in the Aetna subscriber agreement was effective as a matter of state contract law, those anti-assignment provisions should not defeat the provisions of ERISA that grant Plaintiff standing to sue by virtue of having received assignments from the Patient.

### B. Aetna Waived Its Anti-Assignment of Benefits Clause Through Its Course of Conduct and Provided Written Consent For Plaintiff's Assignment of Benefits

In its Motion for Summary Judgment, Aetna cites the anti-assignment of benefits contained within a Rider of a Plan that does not clearly apply to D.O. It is important to note that Defendant has provided three (3) separate Complaint and Appeals Riders for New York, Louisiana and Texas and purports to rely upon the Rider for Louisiana. These documents are attached to the Defendant's Brief and have not been authenticated in any manner by an Aetna representative as applicable to D.O.'s Plan.  Regardless of the provision, Aetna has waived and provided written consent to the Assignment of Benefits from D.O.

D.O. signed and provided the Assignment of Benefits to Plaintiff for the medical services at issue in this case. Aetna's policy states "coverage may be assigned only with the written consent of Aetna," Defendant's Brief, Exhibit C, page 64.  Aetna waived this provision when it received the bills from Plaintiff, made payments and sent Explanation of Benefits to Plaintiff and responded to the November 22, 2011 letter from Plaintiff in writing by letter dated November 30, 2011. Defendant's Brief, Exhibit H. Each of these activities affirmatively acknowledged Plaintiff's Assignment of Benefits through written consent. Plaintiff in turn relied upon this conduct and continued its practice as assignee to D.O.'s benefits.

In each instance, not only is it apparent that the anti-assignment clause in Defendant's Plan was waived, but rather, Defendant affirmatively consented to the Assignment of Benefits via written consent as each means of communication explicitly and implicitly.

Further, the anti-assignment provisions of Aetna's subscriber agreements do not necessarily preclude Plaintiff from attaining standing.  For example, Judge Greenaway's opinion in <u>Gregory Surgical Services v. Horizon Blue Cross Blue Shield of New Jersey</u>, 2006 WL1541021 ( D.N.J.)(June 1, 2006) New Jersey have recognized the concepts of waiver and estoppel both by action and by inaction and allowed Health Care Providers facing anti-assignment clauses to plead and re plead facts sufficient to defeat a 12(b)(6) motion through a dismissal without prejudice rather than suffer the harsh remedy of a dismissal with prejudice.

Plaintiff relied upon the approvals of the surgical procedures and the representations that these surgeries would be paid. Consequently, Plaintiff detrimentally relied upon the representations of Aetna. Due to the frequency of contacts between Plaintiff's office and Aetna, there were ample opportunities by Defendant to raise the issue of this anti-assignment provision with both Plaintiff and D.O., instead of acting as if it did not exist up to the filing of the within motion.

Judge Greenway held in <u>Gregory Surgical Services v. Horizon</u>, <u>supra</u>, that a course of dealings constitute waiver of an anti-assignment provision under New Jersey law, as follows:

> The Superior Court of New Jersey, Appellate Division addressed the issue of waiver of an anti-assignment provision in <u>Garden State Bldgs., L.P. v. First Fid. Bank</u>, N.A., 305 N.J. Super. 510, 523 (N.J. Super. Ct. App. Div. 1997), cert. denied, 153 N.J. 50 (1998). The court held that New Jersey recognized such a theory: 'an anti-assignment clause may be waived by a written instrument, a course of dealing, or even passive conduct, i.e., taking no action to invalidate the assignment vis-a-vis the assignee.'

<u>Gregory Surgical</u> 2006 WL 1541021 at p.2

A case on point is <u>Hermann Hospital v. MEBA Med & Benefits Plan</u>, 959 F. 2d 569 (5th Cir 1992) in which a patient assigned her rights to receive benefits to her health care provider . The health care provider's office kept in touch with the insurer for three years while it tried to work out a resolution of the claim. It was only after the provider filed a lawsuit for fees that the insurer surfaced with an anti-assignment provision. The Court held that the insurance company was estopped from raising the anti-assignment clause because it remained silent for so long and knew that the provider was relying on the assignment to get paid. <u>Id</u>. at 574. Hermann shows that, that principles of waiver and estoppel are fully applicable to ERISA plans. Hermann also shows that a long standing relationship and continuous course of conduct such as set forth in <u>Gregory Surgical</u> is not necessary to constitute a waiver or estoppel. Plaintiff acknowledge that at this juncture the few paragraphs devoted to this issue scattered throughout the Complaint do not yet meet this test. However, Plaintiff asks this Court for an opportunity to re-plead this Count to establish those facts detailing its interactions with Aetna (which in itself constitutes a longstanding continuous course of dealing) so that a trier of fact can judge Defendant's argument on the merits. Under this theory, the amendment would neither be inequitable or futile. <u>Grayson v. Mayview State Hosp</u>., 293 F.3d 103, 108 (3rd Cir. 2002).

### C. Aetna Should Be Equitably Estopped From Denying Coverage On Their Anti-Assignment Of Benefits Theory Because Aetna Is Prohibited From Unreasonably Withholding Consent

The waiver should estop Defendant from denying the Assignment of Benefits because Plaintiff relied on Defendant's waiver. All contracts must be interpreted with the understanding that the parties will execute their respective promises under the contract (policy) with the implied covenant of good faith and fair dealing. <u>Son of Thunder v. Borden, Inc.</u>, 148 N.J. 396, 420, 690

A.2d 575 (1997). Therefore, when such a clause contains no express standard for giving or withholding consent by the insurance company to the contemplated transfer of any of the insured's "rights and duties," the restriction is deemed to include an implied covenant that the insurance company's consent may not be unreasonably withheld." Parkway Insurance Company v. Chiro, 1999 WL 33944726 at 3 (1999). Once the waiver was in effect, consent must follow. In fact, consent did follow because Aetna's actions demonstrated the understanding that Plaintiff was the assignee of the patients. Essentially, Defendant should be estopped from retroactively rescinding its consent. Since Neurological Surgery has effectively received the assignment of benefits from its patients with regard to Aetna's benefits plan, Plaintiff has standing.

### III. THERE WAS NO FORMAL APPEAL PROCESS REQUIRED UNDER THE PLAN, BUT PLAINTIFF'S LETTER OF NOVEMBER 22, 2011 WOULD CONSTITUTE AN APPEAL

Aetna argues that Plaintiff failed to appeal the initial claim determination. Plaintiff rejects this argument. Aetna has failed to provide any reliable information to indicate that a formal appeal process is required under D.O.'s Plan. The three Riders of Complaints and Appeals are not necessarily applicable to D.O. and should not be construed as having any relationship to D.O. without additional verification. These Riders were attached to Defendant's Brief without any confirmation from an Aetna representative. In addition, the language of the "Louisiana" Formal Process only requires appeals in a situation where Aetna has issued an adverse benefit determination. Defendant's Brief, Exhibit C. Aetna did not issue any formal adverse benefit determination. In addition, Aetna did not provide Plaintiff with any indication how, when or where to send an appeal regarding the Explanation of Benefits. As such, no appeal would be required of this EOB at issue in this case.

Notwithstanding, same, Plaintiff sent a letter to Aetna on November 22, 2011 addressing the CPT codes at issue for additional payment. If an appeal is determined to be required under the Plan, this letter would constitute and should satisfy that appeal requirement. However, Aetna unreasonably refused to address Dr. Cifelli's position and dismissed the letter entirely.

## CONCLUSION

Based upon the foregoing, Plaintiff respectfully submits that Defendant's Motion for Summary Judgment should be denied.

        **MASSOOD & BRONSNICK, LLC**
        **Attorney for Plaintiff**

        By: _____
            **ANDREW R. BRONSNICK**

Dated: December 2, 2013